ROBERT WINKLER v. CAROLINA AND NORTH WESTERN RAIL-WAY CO.

(Decided April 17, 1900.)

*Barb-Wire Fence—Negligently Maintained Right-of-Way—Nuisance—Injury to Stock.*

A barb-wire fence negligently constructed and maintained along defendant's right-of-way, so as to be dangerous to stock, becomes a nuisance, for which the company is liable to the owner of stock injured by it.

CIVIL ACTION for damages for injury to plaintiff's horse alleged to have been caused by the negligent construction and maintenance of a barb-wire fence along the defendant's right-of-way through plaintiff's pasture, tried before *Bowman, J.,* at November Term, 1899, of CATAWBA Superior Court.

The plaintiff's horse was badly injured by becoming entangled in a barb-wire fence constructed by the defendant along its right-of-way through plaintiff's pasture, against his protest. The fence posts were old cross-ties placed some forty or fifty feet apart, and connected by three barb-wires; in some places it was 12 inches high, and from that to thirty or thirty-five inches from the ground to the top wire—it would sag down about twelve inches in some places when people crossed it—there was no top bar.

When the plaintiff rested, the defendant moved for judgment as in case of nonsuit.

The Court allowed the motion, holding that the railroad was not liable, because its fence was upon its right-of-way, and not along a public highway.

Plaintiff excepted, and appealed.

*Messrs. E. B. Cline,* and *M. H. Yount,* for appellant.
*Messrs. J. II. Marion,* and *T. M. Huffham,* for appellee.

CLARK, J. The defendant erected a barb-wire fence along its right-of-way. There was evidence that it was negligently erected and maintained. "In some places it was 12 inches high and from that to thirty or thirty-five inches from the ground to the top wire. Three strands of wire were used, and it was put so far apart that, when people crossed it, it sagged down about twelve inches in some places. The posts were old rotten cross-ties forty or fifty feet apart." The plaintiff's horse, running in his pasture, got entangled in this

wire fence, and was injured, and this action is brought for damages sustained.    It was error in the Judge to nonsuit the plaintiff.

In *Sisk v. Crump,* 112 Ind., 504 (2 Am. St. Rep., 213), it is said, "The act of a land-owner in erecting upon his property along a public highway a barb-wire fence does not in' itself render him liable to one who sustains an injury therefrom, but if he negligently constructs and maintains it in such a manner as to be dangerous, he is liable, for instance, for injury to an animal which is attracted by other animals, or by grass growing inside the fence, and in endeavoring to cross such defective fence becomes entangled therein." The Court says the statute of that State expressly authorizes the erection of barb-wire fences, and the liability comes only from their neglected condition.    To exactly the same purport is *Loveland v. Gardner,* 79 Cal., 317, that while the owner of land it not liable from the mere act of constructing a wire fence thereon, for damages sustained by the animals of others, yet he is bound to see that the fence is not so negligently maintained as to become a trap for them from their natural propensities of which he must take notice.    The liability of the defendant in this case is that which would attach to anyone else putting up a defective fence which is from its peculiar nature thereby made dangerous.

Chapter 65 of the Laws of 1895, makes it unlawful to erect a barb-wire fence along any public road or highway, unless a railing is placed on top of the fence not less than three inches high.    It is perhaps to be regretted that this act is restricted to the counties therein named.    But, though Catawba (whence this appeal comes), is one of such counties, we think the act has no application here, for the railroad, though a public highway in some senses, is not such within

the purview of this act, which was evidently intended for the protection of livestock passing along a public road.

Nor does it make any difference that Catawba County is within the limits of the "no-fence territory" in which stock are prohibited from running at large. Not only the track of the defendant passed through the plaintiff's pasture where his stock had a right to run unless the defendant fenced up its right-of-way (*Railroad v. Sturgeon,* 120 N. C., 225), but even if it were otherwise, and the plaintiff's horse was illegally running at large, it was not contributory negligence. *Horner v. Williams,* 100 N. C., 230. Nor could contributory negligence be considered on a motion to nonsuit. *Cogdell v. Railroad,* 124 N. C., 302. The plaintiff was liable for the trespasses if the animal was illegally at large, and the horse could be impounded, but the defendant had no right to catch him in a barbed-wire trap, and wind him up in its meshes as merciless as the coils which crushed Laocoon and his sons. The defendant was not compelled to put up a fence at all (*Jones v. Railroad,* 95 N. C., 328), but if it did so, it should not be put up in a negligent manner calculated to injure livestock. *Sic utere tuo, ut alienum non laedas.* It is not claimed that the defendant did so intentionally. The ground for damages is the defendant's negligence in maintaining a barbed-wire fence in such a negligent condition that the horse, running in his owner's pasture, was caught and cut by an impediment which, in view of the nature of the animal, enticed him to try to cross it, instead of being high enough, and tight enough to hold him back. In *Jones v. Railroad, supra,* in which the defendant company was held not liable for the plaintiff's blind horse falling into the cut, there was no allegation that the cut, which was necessary, was negligently excavated, and that thereby, the injury was caused.

Here, the negligent method of keeping up the fence is alleged as the direct cause.

This case differs from *Morrison v. Cornelius,* 63 N. C., 346, where the owner of saltpetre vats covered them up, and enclosed them by a sufficient fence, but the plaintiff's cattle got into the enclosure in some unknown way, drank of the liquid and died. It was held there was no evidence of negligence. It was also held that if one digs a well or a trench on his own land, and a neighbor's cattle fall therein, the landowner is not liable. So situated, they are not nuisances *per se,* or likely to injure. But, here, the wire fence is dangerous by the manner in which it is put up; it was likely to injure, for it was on the edge of a neighbor's pasture where his livestock would be likely to come and, if they came, would almost certainly be ensnared. By its location and the probability of its causing injury at that place in its defective state, it was a nuisance. S. & R. Negligence, sec. 702, (5th Ed.), and cases cited; *Rehler v. Railroad,* 28 N. Y. Supp., 286, and cases cited.

New trial.