# CHARLESTON.

## O'HANLIN *v.* THE CARTER OIL COMPANY.

Submitted June 16, 1903—Decided February 2, 1904.

1. NUISANCE—*Improper Use of Sidewalks—Damages.*
    Streets and sidewalks are designed for the use of the public, and the use of them by an individual simply for his own convenience and accommodation, unaccompanied by any public use, as for drains, private crossings, sewers, vaults, cess pools or other obstructions, or excavations, is unauthorized, and essentially a nuisance, for which, such individual is liable for all damages sustained in consequence of improper appropriation of the street or sidewalk to his mere personal use. (p. 515).

Error to Circuit Court, Tyler County.

Action by John O'Hanlin against the Carter Oil Company. Judgment for plaintiff, and defendant brings error.

*Affirmed*

ROBERTS & CARTER and T. P. JACOBS, for plaintiff in error.

MCINTIRE & MCINTIRE, for defendant in error.

MILER, JUDGE:

On the 17th day of May, 1900, John O'Hanlin, the defendant in error, commenced a civil action before a justice of the peace of Tyler county, against The Carter Oil Company, a corporation, for damages for an alleged wrong. The summons, which contains the only description of the cause of action, found in the record alleges that on the————day of September, 1899, in the city of Sistersville, in the said County of Tyler, the defendant was the owner of a steam pipe or line, used in conveying steam which, among other points, was buried on Virginia street in said city; that defendant wilfully and negligently caused said steam pipe or line to remain on said street, and to be used in conveying hot and scalding steam while in a defective, unsafe and dangerous condition, which defects were well known at and before the time last mentioned to said defendant; that at the time last mentioned, while plaintiff's daughter, Alice,

aged five years, was passing over and along said Virginia street in said city, the earth directly over said steam pipe or line, softened by escaping steam from said defective steam pipe or line, gave way, precipitating his said daughter, Alice, into the orifice which was filled with hot water and scalding steam, which was then and there escaping from said steam pipe or line, scalding and burning his said daughter, Alice, on the legs, arms, hands and body, for which plaintiff claimed three hundred dollars damages. There was a trial of the action by the said Justice, and judgment rendered by him against the defendant for two hundred and fifty dollars with costs. From this judgment, the defendant was granted an appeal to the circuit court of said county, wherein the action was again tried upon the pleadings made up before the justice, and upon the plea by the defendant of "Not guilty of the trespass in the declaration mentioned," and joinder therein by plaintiff, filed in the circuit court. The latter trial was by a jury.

At the close of plaintiff's evidence in chief, the defendant moved to exclude the same from the jury, which the court refused to do, and the defendant excepted. The defendant then introduced its evidence, and demurred to the evidence adduced in the case, in which demurrer the plaintiff joined. Thereupon the jury found the usual conditional verdict, assessing the plaintiff's damages at one hundred and sixty-five dollars, if the law should be for him. Upon consideration thereof, the court overruled the said demurrer, and rendered judgment upon the verdict against the defendant for said one hundred and sixty-five dollars, and for the plaintiff's costs, both in court and before the justice. To the ruling and judgment of the court aforesaid, defendant excepted; and also moved the court to set aside said verdict and judgment and grant it a new trial of the action, which the court also refused to do; and the defendant again excepted. The several rulings of the court, the exceptions thereto by defendant, and all of the evidence introduced and considered on the trial, are certified in bills of exception, and made parts of the record.

To the last mentioned judgment, the defendant was granted a writ of error, and assigns various errors in the record of the proceedings in the circuit court, not necessary to be here set out in detail.

The material statement of the alleged negligence of the defendant in the summons, treated as a declaration is that: The defendant was the owner of a steam pipe or line used in conveying steam which, among other points, was buried on Virginia street in said city; that defendant wilfully and negligently caused said steam pipe or line to remain on said street and to be used in conveying hot and scalding steam, while in a defective, unsafe and dangerous condition, which defects were well known to said defendant at and before the time last mentioned.

The facts are: . Prior to July, 1899, plaintiff in error, The Carter Oil Company, owned a certain oil well in Sistersville, near Virginia street. This street was then unpaved, and without curblines or side walks. The company had a boiler house, from which a two inch steam line, belonging to it, ran across the street to its said oil well. About the time last mentioned, the city of Sistersville gave notice to the said company to lower its steam line, so that pavement of the street, which had been determined upon by the city, could be laid over said line. The steam line was thereupon lowered by the company as directed. This work was done under the direction of the foreman of the company, and the city engineer, and to the satisfaction of the latter. Not long before the paving was done, one O. P. Collins had built a dwelling house over the steam line. The distance between the house and the curb line of the street, after it was put in, was about ten feet. Between the curb line and the house, the ground was lower than the level of the paved street. After the steam line was lowered, it passed through the curb line, but remained some distance above the surface of the ground between the curb and the house. Under the pavement of the street, the steam line was encased in another iron pipe, but between the curb and the house, it was enclosd in a wooden steam box, supported by what is called a "horse," made by nailing two legs on a board or other piece of timber. Some of the dirt excavated and taken from the street, preparatory to the paving of it, was used in bracing and holding the curb in place, at the point where the steam line pased through it, and some of it was placed at the point where the line passed under the house. Sometime after the curbing had been put in and the steam line covered in front of the house as aforesaid, other filling with dirt was done there by some one other than The Carter Oil

Company, and without its knowledge. By whom it was done, the evidence does not show, but it strongly tends to prove that the employes of the city did it. The dirt filling on the steam pipe where it left the curbing was about three feet in thickness. This filling, along the curb, was not paved, but was used and traveled as a side walk.

On the first day of September, 1899, while said Alice, who had gone to the Collins house, on a visit the day before, was playing on the fill, or dirt side walk over the steam line, her foot and leg went down in a hole or opening, filled with hot mud and escaping steam, and they were burned. Miss Mollie Collins, the only witness for the plaintiff who testified as to the condition of the place where the accident occurred, says that she came with Alice to Collins' the day before from New Martinsville, where they both resided; that Alice was playing out where the pavement should have been; that she heard a scream and went out to see what was the matter; that the ground had given away, and let the child in where the steam pipe was; that she did not live there (at the Collins house,) but that the most of the time she was there, the place (where the accident occurred) seemed to be wet all the time; it seemed to be kind of sunk; there didn't seem to be any steam; but it seemed wet. "I suppose the steam was there. I looked in afterwards, and it was hot just like lime; like lime would boil; and it was hot, for I don't know how long, after the child was burned, till you couldn't put your hand in it, at all; and the hole was large enough for the child to get her leg in." She testified that on other visits to Collins', who is her brother, she noticed this wet place; but saw no steam escaping; that she made no complaint to any one about seeing the wet place; that there was nothing in that, to indicate that steam was under it; that it was just damp looking, that was all. The evidence further shows that after the accident, at the point where it occurred, the steam line was examined, and, as the witness states, "there under the ground it seemed to be a little bit steam soaked for about twelve feet, and the line where it was joined had went out, pulled out about one thread, that was the extent. When we put the steam through we saw only a small scip in the line." * * * "That was where the collar was connected on." Witness further stated that he had been in the oil business since 1881, that the union of the steam line

made at the point where the accident occurred was a proper one; that the material used was such as is ordinarily used for a steam line throughout the oil country; that the joint was on when the steam line was lowered, and at the time of the examination, there was a slight sag in the pipe, caused by the weight of the fill of dirt upon it, outside of the curbing; that this weight caused the pipe, where it was screwed into the back of the union, to pull out about one thread; and that steam seiped or leaked out, around the threads. It further appears that the steam pipe was of good material, as good as new, A No. 1, and properly joined together; put down at the point of the accident in the unusual manner; and that it had sufficient strength to withstand the weight of the first fill. It is also shown that the company had no notice, and so far as the record discloses, no other person had any knowledge that the steam line was defective or out of repair until after the accident happened. Another witness testified that the quality of the steam line at the place of the accident was as good as is used in that class of business; and that with the weight which was upon it there, after the second lot of dirt was placed thereon, a pipe line of the best material would have sagged. It is also proved that the company did not know who put the dirt or fill on the steam line the second time; but that it would have been the duty of the city to place it there.

Another witness says that he was superintendent of the streets of the city when the accident occurred; that he did the grading and paving of the street at that point; that, representing the city, he had the dirt from the street filled in between the curb and the Collins house. The foreman of the company says that his duty, for some time, called him twice a day to a well, within one hundred feet of the place of the accident, and in plain view of it; but that his attention was never called to any leak in the pipe, and that he saw nothing there that indicated a leak.

We must therefore conclude from the evidence that the steam line was lowered by the direction of the city in a proper manner, and to its satisfaction; that the dirt fill placed over the steam line, was necessary as well, to cover the line, as to brace and hold in place the curb; that it was used and traveled by the public as a side walk; that the material used in the steam line

was of good quality, properly joined together, and of sufficient strength to have withstood the weight of the first fill; that other dirt was afterwards put on the side walk at the point where the steam line crosed under it; that this additional weight caused the threads of the pipe to break, and thereby a leak of the steam occurred; that the escaping steam, and hot mud, the result of the escaping steam, caused the injury to plaintiff's daughter, and that defendant had no knowledge of the defect in the steam line until after the accident. There is no conflict in the evidence, or dispute about the facts proved.

This full statement of the case has been made, because the defendant seems to rest its defense upon the theory that it placed its steam pipe under the street and side walk by permission of the city authorities, and operated it in a lawful business with due care and skill; that it is not guilty of negligence; and is not liable to the plaintiff in damages for the alleged injury, occasioned by the defect in its steam pipe, of which it had no notice, and could have had no knowledge, under the circumstances.

Sistersville is an incorporated city, and is given the authority by, and charged with the duty under, its charter to lay off, vacate, close, open, alter, grade and keep in good repair, the roads, streets, alleys, pavements, sidewalks, cross walks, drains, and gutters therein, for the use of the citizens, and of the public; to improve and light the same; and to keep them free from obstructions of every kind; and it also has authority to raise the necessary revenues for its municipal purposes and expenses. Chapter 4, section 28, Acts 1899.

"It is a principle of nearly universal acceptation in this country, that when a city or town is incorporated and is given control over the streets and walks within its corporate limits, and is empowered to provide the means to make and repair them, the corporation not only assumes this duty but by implication agrees to perform it for the benefit and protection of all, who may have occasion to make use of these public easements; and that for failure in the discharge of this duty the corporation is responsible to the party injured." *Wilson* v. *City of Wheeling,* 19 W. Va. 323, 324.

Section 53 of chapter 43 of the Code provides that: "Any person who sustains an injury to his person or property by rea-

son of a public road, or bridge, in a county, or by reason of a public road, bridge, street, sidewalk or alley in an incorporated city, village or town, being out of repair, may recover all damages sustained by him by reason of such injury, in an action on the case in any court of competent jurisdiction, against the county court, city, village or town in which such road, bridge, street, side walk or alley may be, except that such city, village or town shall not be subject to such action, unless it is required by its charter to keep the road, bridge, street, sidewalk or alley therein, at the place where such injury is sustained, in repair."

Numerous cases have arisen under this statute, and been decided by this Court. in which the liability of municipal corporations thereunder has been well considered, and the law upon that question settled in this State. *Chapman* v. *Town of Milton,* 31 W. Va. 384; *Gibson* v. *City of Huntington,* 38 W. Va. 177; *Yeager* v. *City of Bluefield,* 40 W. Va. 484; *Van Pelt* v. *Town of Clarksburg,* 42 W. Va. 218.

In *Biggs* v. *City of Huntington,* 32 W. Va. 55, 61, the Court says: "It will be observed, that the statute in express terms makes the town liable for damages for injuries sustained by reason of a defect in a public street or sidewalk. The lanuage is unqualified and without exception or limitation; and therefore the question of notice or want of care on the part of the town is altogether immaterial. If the street or sidewalk was in fact defective, and such defect caused the injury to the plaintiff, it is no defense on the part of the town, that it had exercised great care in repairing the street or sidewalk. It is only necessary in such suit to allege and prove the existence of the defect, and that the injury was occasioned thereby."

In *Sheff* v. *City of Huntington,* 16 W. Va. 307, (pt. 1 syl.), it is held: "If a person is injured by reason of a public road being out of repair, the corporation whose legal duty it is to keep the road in good repair, is liable to him for damages, whether it had notice of such defect, or not." *Evans* v. *Huntington,* 37 W. Va. 601.

The law is not more lenient to an individual whose cause the streets or sidewalks of a city or town to be defective or dangerous than it is to the city or town itself, which permits such acts to be done, or allows dangerous agencies thereon or thereunder to remain unremoved or unabated.

In some instances the law expressly confers upon corporations organized to construct and maintain works of public utility the right to occupy and use streams of water, water courses, streets, highways, roads, turnpikes and canals, but upon condition that such corporations shall restore the stream, water course, street, highway, road, turnpike or canal, intersected or touched, to its former state, or to such state as not unnecessarily to impair its usefulness, and to keep the part thereof so used, in repair. But we find no authority in the charter of Sistersville, or in the general statute, allowing the occupation, or use, of the public streets of that city by individuals for their own benefit, or mere personal convenience.

In *Dygert* v. *Schenk,* 23 Wend. 446, it is held that, "Where the owner of land over which a public highway passes, digs a raceway across the road to conduct water to his mill, and builds a bridge over the raceway, and an injury is sustained by any one in consequence of the bridge being out of repair, such owner is liable in damages to the party aggrieved," and in *Congreve* v. *Smith,* 18 N. Y. 79, 82, it is said that, "The general doctrine is, that the public are entitled to the street or highway in the condition which they placed it; and whoever, without special authority, materially obstructs it, or renders its use hazardous, by doing anything upon, above or below the surface, is guilty of a nuisance; and, as in all other cases of public nuisance, individuals sustaining special damage from it, without any want of due care to avoid injury, have a remedy by action against the author or person continuing the nuisance. No question of negligence can arise, the act being wrongful. It is as much a wrong to impair the safety of a street by undermining it as by placing objects upon it. There can be no difference in regards to the nature of the act or the rule of liability, whether the fee of the land within the limits of the easement is in a municipal corporation or in him by whom the act complained of was done; in either case, the act of injuring the easement is illegal."

It is a general legal principle, that there can be no rightful permanent use of a public highway by individuals for private purposes. Eliott on Roads and Streets, section 645.

This Court, in *Curry* v. *Town of Mannington,* 23 W. Va. 14, 17, said: "Streets and sidewalks are designed for the use of the public and the use of them by an individual simply for

his own convenience and accommodation unaccompanied by any public use, as for drains, private crossings, sewers, vaults, cesspools, or other obstructions is unauthorized and esentially a nuisance for which such individual is liable for all damages sustained in consequence of the improper appropriation of the street or sidewalk to a mere personal use."

In the light of the foregoing authorities, we are of opinion that the circuit court did not err in overruling the defendant's demurrer to the evidence. The judgment complained of is fully sustained by the proof, and must, therefore, be affirmed.

*Affirmed.*