# OCTOBER, 1935.

Annie Boyle, Respondent, v. Neisner Brothers, Inc., Appellant.
87 S. W. (2d) 227.

St. Louis Court of Appeals. Opinion filed Nov. 5, 1935.

Motion for rehearing overruled Nov. 19, 1935.

*Charles A. Lich* and *William S. Connor* for respondent.

*Wayne Ely* and *Tom Ely, Jr.* for appellant.

94

HOSTETTER, P. J.—This suit was instituted in the Circuit Court of the City of St. Louis, Missouri, on the 17th day of January, 1933, against Nicholas Seibel and Birdie Seibel, his wife, William V. Seibel, and Cora M. Seibel, his wife, and Neisner Brothers, Inc., a New York corporation and a resident of that State. The Seibels were all residents of Missouri, two of them residing in the City of St. Louis and the other two in the county of St. Louis. They were the owners in fee of a certain lot of ground located at the northeast corner of Irving and Easton Avenues in Wellston, St. Louis County, and had leased the same to Neisner Brothers, Inc., for a term of ninety-nine years, commencing on January 1, 1930, and the latter conducted a five and ten cent store on said premises, in the building which it had constructed thereon in the year 1929.

The evidence disclosed that plaintiff, on the night of December 17, 1932, was walking in a northerly direction on the sidewalk on the

east side of Irving Avenue (a much traveled public highway); that when she had gotten opposite a side door in the building in which Neisner Brothers, Inc., conducted its store, the door was opened from the inside by Frank Williams, a boy, and struck her in the back throwing her to the pavement and causing her to sustain severe injuries; that the door was a large steel one, weighing about two hundred pounds, and opened out onto the sidewalk on which plaintiff was walking; that the sidewalk from the wall of the store building to the curb was nine feet one inch wide and the door was three feet six inches wide, and when opened projected over the sidewalk for a distance of two feet eight and one-half inches.

Frank Williams in his testimony stated that he went in and out of this door several times every day and that he noted, up to three or four days prior to the time plaintiff was struck by the door, that the door check was in good working order and that it required a good deal of exertion to push the door open, but that, for the three or four days just before plaintiff's injury, the door worked very easily and slight pressure from the inside of the door would cause it to swing rapidly outward and that, on the day in question, he opened the door in the manner that he had usually done, not recalling that the door check was not working as it formerly had, and that the door flew open rapidly, and struck the plaintiff.

The plaintiff's amended petition, upon which the case was tried, set out the facts substantially as above detailed, and contained divers charges of negligence and an averment that it constituted a nuisance to permit the door to swing out over and across the public sidewalk much used by pedestrians, and that the use of such door, so located, constituted a nuisance.

Neisner Brothers, Inc., and the four defendant Seibels collectively, filed separate answers, both being general denials.

The cause being tried, the plaintiff recovered a verdict for $5,500 against defendant Neisner Brothers, Inc. Inasmuch as no point is made on the ground that the verdict is excessive, we do not describe the nature and extent of plaintiff's injuries.

On February 8, 1933, before defendant Neisner Brothers, Inc., filed its answer, it filed its petition and bond for removal of the cause to the District Court of the United States for the Eastern Division of the Eastern Judicial District of Missouri, having prior thereto served plaintiff's counsel with notice of the intended application for removal and including a copy of the bond and petition, and, on February 15, 1933, the circuit court denied the application for removal and said Neisner Brothers, Inc., on March 22, 1933, filed a full transcript of the record in said United States District Court, and, on March 17, 1933, plaintiff filed her motion in said United States District Court to remand the cause to the circuit court, and, on May 9, 1933, the plain-

tiff's said motion to remand the cause to the circuit court was sustained and the cause was so remanded.

Thereafter, during September and October, 1933, the plaintiff filed her amended petition in the circuit court, to which the defendants filed their separate answers as hereinbefore set out. On February 5, 1934, at and during the February term, 1934, of the circuit court, the cause proceeded to trial in division No. 5 of said circuit court, before Honorable FRANK C. O'MALLEY, as Judge, and a jury. On February 6, 1934, the evidence in chief on behalf of the plaintiff being concluded, the four Seibel defendants presented their instruction in the nature of a demurrer to the evidence, which instruction the court marked as given and read the same to the jury, whereupon the plaintiff, by her counsel, took an involuntary nonsuit as to said four defendants with leave to move to set the same aside. Then the defendant Neisner Brothers, Inc., filed its second petition and bond for a removal of the cause to the United States District Court on account of a diversity of citizenship between the plaintiff and the remaining defendant. This petition for removal was also denied by the court. No written notice was previously given to the plaintiff of the intention to file this second petition for removal. The Neisner Brothers, Inc., through its attorneys, orally moved the court to require plaintiff to elect on which ground of her petition she would proceed, on the nuisance charge or the negligence charge, set out in her amended petition, and the court sustained such motion and plaintiff, through her counsel, and, over her objection and exception to the order of the court, elected to stand on the nuisance theory and thereupon defendant Neisner Brothers, Inc., asked the court to declare that plaintiff could not recover on the nuisance charge, which the court refused, and, the trial proceeding, evidence was offered by defendant and also by plaintiff in rebuttal and the trial finished with the result as set out hereinbefore, and, after an ineffective motion for a new trial the cause was brought to this court by defendant, Neisner Brothers, Inc., by appeal for review.

The first and chief assignment of error urged, is that the trial court erred in refusing to allow the petition of defendant Neisner Brothers, Inc., for removal of the cause to the United States District Court. The contention of counsel for defendant is that when the four Seibel resident defendants were let out of the case by the trial court giving and reading an instruction to the jury in the nature of a demurrer to the evidence as to them, the plaintiff failed to save an exception to such action of the court and, therefore, it was a voluntary dismissal, in which event, the case, then being one solely between a resident of Missouri and a resident of New York, was removable; whereas, counsel for the plaintiff claims that the case was tried under the rule of court that all adverse rulings of the court were deemed

to be excepted to as a matter of course and that, in making up the bill of exceptions the court reporter would note therein exceptions to all adverse rulings whether they were orally made or not during the progress of the trial. The record before us, consisting of appellant's abstract and respondent's additional abstract, discloses the following in relation to such diverse contentions.

The verdict of the jury was returned on February 7, 1934, and during the regular February term, 1934, and on the same day a judgment was rendered thereon. Defendant Neisner Brothers, Inc., in due time filed its motion for a new trial, which was carried over to the April term, 1934, and was overruled on the 23rd day of April, 1934, and, on the last mentioned date plaintiff's motion to set aside her alleged involuntary nonsuit as to the Seibel defendants was overruled and defendant, upon its application, was allowed an appeal. Thereafter, during the September term, 1934, to-wit: on November 5, 1934, defendant Neisner Brothers, Inc., through its attorney, presented its bill of exceptions, which was duly allowed and signed by the judge and made a part of the record on said date. At the time of the signing and filing of the bill of exceptions it did not contain any exceptions of plaintiff to the action of the court in giving and reading to the jury the instruction in the nature of a demurrer to the evidence as to the four individual Seibel defendants, but did contain this clause: "Whereupon the plaintiff, by her counsel, took an involuntary nonsuit as to said defendants with leave to move to set aside." Thereupon, plaintiff's counsel learning for the first time that the bill of exceptions as signed and filed did not contain an exception as to the ruling of the court on the demurrer offered and sustained by the court in respect to the four resident Seibel defendants, on November 7, 1934, filed a motion on behalf of plaintiff to amend, modify and correct said bill of exceptions so as to include plaintiff's exception to the action of the court in sustaining the demurrer in respect to the four resident Seibel defendants which the official court reporter had failed to include in making up the bill of exceptions, and also asked that it be corrected so as to include an exception to the action of the court in overruling plaintiff's motion to set aside her involuntary nonsuit. This motion to amend and correct the bill of exceptions resulted in a lengthy colloquy between the court and opposing counsel. The plaintiff's attorney contending that he, on being informed at the beginning of the trial that exceptions to all adverse rulings were saved as a matter of course, relied upon that and, that in okaying the bill of exceptions he had overlooked the fact that the court reporter had not noted an exception on the part of the plaintiff to the action of the court in giving and reading to the jury the demurrer to the evidence offered by the four Seibel defendants, and to the overruling of plaintiff's motion to set aside the involuntary nonsuit as to said defendants.

Thereupon the trial judge said: "It was understood in that case and every other case, I think, here, that exceptions to adverse rulings are saved as a matter of course." Whereupon counsel for defendant said that he did not believe any such announcement was made, and, if so, the bill of exceptions did not show such announcement, and that if any such announcement was made he didn't know it and didn't agree to it, but that he thought that it was immaterial to the question in issue whether such a rule had been adopted by the court or not and that he had told Mr. Sebastian (the court reporter) during the trial and before plaintiff had concluded her case, that he did not want him to show any exceptions that were not actually saved in the record, that he wanted him to put down nothing except what was said, but to put down all that was said, and that he had the very question in mind at the time on the matter of removal, and that his position was, that the court had no power to amend or correct the bill of exceptions from memory, and proceeded to read some authorities to the court in support of his contention. The trial judge then remarked: "You think, then, if the court announces in the case that exceptions to all adverse rulings are saved as a matter of course, that is just so much wind, although both counsel are present, and they must still walk up like parrots and say 'I except to the ruling of the court?'" Counsel for defendant remarked that plaintiff's attorney had filed in the Federal Court and introduced in evidence there, a certificate by the trial judge that exceptions were saved as a matter of course in his court and that such was done pursuant to the rule or custom; that he (defendant's attorney) had no recollection at all and did not believe that any announcement was made at the outset of the trial that exceptions would be saved as a matter of course. The trial judge then said: "That has been announced in every case that I have tried up here, so far as my recollection goes." Further argument along the same line was indulged in; counsel for the respective sides radically disagreeing as to whether the court announced that the trial would be conducted under the rule in which as a matter of course all adverse rulings were deemed and taken as excepted to. The plaintiff's counsel saying that if plaintiff's exceptions were not allowed that it was his contention then, that the exception to the overruling of defendant's motion for a new trial should be stricken out because he was satisfied defendant's counsel was not present when the motion was overruled. The trial judge made the following remark: "When the bill of exceptions was written up it should have been written up to show the exceptions in accordance with the rule of this court." The defendant's counsel in reply to the suggestion made by plaintiff's counsel that his exceptions to the overruling of his motion for a new trial should be stricken out, said that he did save his exceptions to the overruling of his motion for a new trial as he

came in and as soon as it appeared in the record and as soon as he knew that it was overruled and that he came in and noted his exceptions. The court then asked him, ''Where?'' and he replied that it was his invariable practice to do it in court. The judge then remarked that he hadn't any memory of that happening; that he was sure if he had come in that he would have remembered it; that he did remember telling counsel for defendant that exceptions were saved as a matter of course; that if there was any way for him to correct the bill of exceptions he would do it because it was perfectly in conformity with what he considered the facts in the case. Counsel for defendant then said: ''The court says any such custom will not suffice as a basis for a *nunc pro tunc* amendment.'' The trial judge then remarked: ''Well, I might not be able to do it, and he might be compelled to save exceptions from that, and you might prevent me from doing it later on; but I think it would be more consistent with justice and truth that I really attempted to do it; and then if you are right about it you can pursue your remedies.''

Thereafter, on the 13th day of November, 1934, and during the same term of court at which the bill of exceptions had been allowed, signed and filed, the court sustained plaintiff's said motion to amend and correct the bill of exceptions, and, in doing so, filed a memorandum, which (caption omitted) is as follows:

''Memo.

''Defendant's bill of exceptions was approved and signed by the court when presented bearing the 'o. k.' of plaintiff's counsel. Almost immediately after the filing of the bill this motion is filed, asking the court to order an amendment so as to show that plaintiff excepted to the action of the court in giving an instruction in the nature of a demurrer to the evidence as to the defendants other than Neisner Bros., Inc., and also to the action of the court in overruling plaintiff's motion to set aside an involuntary nonsuit with leave to move to set aside.

''Since the present judge was assigned to this division it has been the rule to announce in each case assigned here that exceptions are saved to all adverse rulings, as a matter of course. Upon the argument defendant's counsel said he knew of no such rule, and would have objected (as I suppose excepted) if such rule had been announced. On the other hand, plaintiff's counsel says that it was announced. The court is of the latter opinion. But, whether or not so announced, it was the rule, and plaintiff's counsel relied upon it.

''The importance of the matter is this: The sole defendant left in the cause after demurrer sustained, makes for a diversity of citizenship, and the remaining defendant moved for a transfer to the federal court and says that in the absence of an exception, the nonsuit was voluntary. Plaintiff contends that the nonsuit was involuntary, in that

as per the rule exceptions were saved, and therefore the other defendants remain technically in the case. In passing it might be pertinent to observe that it is obvious to the court at this time that plaintiff never had a case against defendants other than Neisner Bros., Inc., and they were made defendants for the purpose of preventing the removal of the cause. So, if it be stated that defendant's present, position is highly technical, it might be said with some truth that it is nothing more than attempting to defeat a technicality with a technicality, or, as is sometimes said, 'fighting the devil with fire.' However, a bill of exceptions should conform to facts. In view of the rule here, exceptions were expressly understood, if not expressly expressed. The case of Tyon v. Wabash Ry. Co., 207 Mo. App. 322, stressed by defendant, would indeed be much in its favor, if its holding in so far as it helps defendant had not been inferentially (if not expressly) overruled by the Supreme Court in banc, in the case of State ex rel. v. Miller, J., 241 S. W. 920, which this court considers decisive.

"The plaintiff's motion to correct the bill of exceptions is therefore sustained and the bill corrected as in said motion prayed.

"(Signed) FRANK C. O'MALLEY,

"Judge."

The following appears in plaintiff's additional abstract:

"Record Entries.

"February 8, 1934—Plaintiff's motion to set aside involuntary nonsuit as to defendants, Nicholas, Birdie, William V. and Cora Seibel, filed.

"April 23, 1934—Plaintiff's motion to set aside involuntary nonsuit as to defendants, Nicholas, Birdie and William V. Seibel, overruled, exception saved.

"February 4, 1935—Certified copy of order of United States District Court remanding cause to this court at costs of defendant, Neisner Brothers, Inc., filed.

"(Said Order, caption and certificate omitted, is as follows:)

"Now the court having duly considered the motion of plaintiff to remand the cause to the Circuit Court of the City of St. Louis, Missouri, doth order that said motion be and is hereby sustained for reasons assigned in memorandum opinion this day filed and doth order that this cause be and is hereby remanded to said Circuit Court, City of St. Louis, Missouri, at the costs of defendant, Neisner Brothers, Inc.

"The opinion of the district judge referred to in the foregoing order reads as follows:

"This case has been tried in the circuit court for the City of St. Louis, resulting in a verdict and judgment against the corporate defendant and is now pending before the St. Louis Court of Appeals. The petition for removal was filed during the trial in the circuit

court. The plaintiff sued the nonresident corporate defendant and four individual resident defendants, so that the cause as filed was not removable. But at the trial when the plaintiff closed her case the court sustained the individual defendants' motion for a directed verdict and plaintiff took a nonsuit with leave to move to set the same aside. Thereupon the corporate defendant filed its petition and bond for removal which was denied and the trial progressed to judgment. The transcript was filed in this court.

"Both parties recognize that if plaintiff voluntarily dismissed her cause against the individual defendants, complete diversity of citizenship then existed and the cause for the first time became removable.

"The question at issue between the parties is whether or not plaintiff saved an exception to the ruling of the court on the motion for directed verdict. Defendant takes the position that no such exception was saved and consequently plaintiff voluntarily dismissed her case as to said defendant. The original transcript filed in this court supported this position as it did not indicate that an exception was saved.

"The plaintiff relies upon the rule of practice which has been shown prevails in the division of the circuit court where the cause was tried to the effect that parties are as a matter of course allowed exceptions to all adverse rulings of the court which exceptions need not be expressly noted at the time but which the reporter in preparing a transcript is required to insert. Such method of preserving exceptions has been approved by the Supreme Court of Missouri in State ex rel. v. Miller, 241 S. W. 920. Relying upon this rule the trial court has directed that the record show that plaintiff did save an exception to the order sustaining a motion to instruct the jury to find for the individual defendants.

"Under these circumstances the nonsuit was involuntary and not voluntary. The case is ruled by American Car Company v. Kettelhake, 236 U. S. 311.

"The motion to remand is sustained.

"CHARLES B. DAVIS, Judge.

"Demurrer of Defendants Nicholas, Cora, Birdie and William V. Seibel Given.

"Comes now defendants, Nicholas Seibel, Cora M. Seibel, Birdie Seibel, and William V. Seibel, at the close of plaintiff's case and demur to the evidence and prays the court to instruct the jury to return a verdict for said defendants.

"(Thereupon the court gave and read to the jury an instruction in the nature of a demurrer to the evidence as to Nicholas Seibel, Birdie Seibel, William V. Seibel and Cora M. Seibel, over plaintiff's objection and exception; whereupon the plaintiff, by her counsel, took an involuntary nonsuit as to said defendants with leave to move to set aside.)"

Plaintiff's counsel in his brief claims that in addition to the corrected bill of exceptions showing that plaintiff had saved an exception to the demurrer in respect to the Seibels that the trial court was justified in denying defendant's motion to remove the case to the Federal Court because no notice was given as required by the federal statutes and cited the following cases in support of his contention:

Sec. 72, Title 28, Mason's U. S. Code; Wanner v. Bessinger & Co., 210 Fed. 96; Vadner v. Vadner, 259 Fed. 614; Miller v. Tele. Co., 279 Fed. 806; Tinker v. Bd. of Supervisors, 292 Fed. 863; C. B. & Q. R. R. v. Willard, 220 U. S. 413.

It is also urged by plaintiff's counsel that the conduct of defendant in perfecting its appeal and yielding to the jurisdiction of the State court has created an estoppel from further insistence on its alleged right of removal.

However interesting the points raised by respective counsel may be, in respect to the removability of the case from the State to the Federal Court, we refrain from passing upon the questions raised, for the obvious reason that we think the action of the United States District Court in remanding the cause to the State court settles the matter and that these questions now become academic ones, since the Federal Court has ruled that it did not acquire jurisdiction; it therefore follows that defendant's recourse, if any it had, would have been to take the question to a higher Federal Court, and, under the condition of the record if we should hold that the State court is now without jurisdiction after the Federal Court has held that it never lost jurisdiction, it would leave the case like Mohammed's coffin, suspended between the heavens and the earth, and this we decline to do. While we expressly disclaim any intention of passing upon the legal questions involved in the action of the trial court in correcting and amending the bill of exceptions, we do commend its attitude in the matter because it is so clearly in consonance with its idea of fair play.

Defendant's assignments of error, 2, 3 and 4, which relate to the action of the trial court in refusing to give an instruction in the nature of a demurrer to the plaintiff's evidence at its close in chief, and a similar instruction at the close of all the evidence, and in refusing to instruct the jury that the maintenance of the door in question was not a nuisance, after plaintiff had elected to stand on that theory, may all be considered together.

We are thoroughly impressed with the soundness of the doctrine that sidewalks are primarily designed for use by the public and that no private person, for purely business reasons, has the legal right to so use them as to obstruct, interfere with, or impair the right of the public to the free and safe use of them. If we admit that the owner or occupier of property has the legal right to maintain a door

which opens so as to take up one-third of the width of the sidewalk, then it follows that he would have the legal right to maintain one which, when opened, would take up two-thirds, or one which, when opened, would take up the whole width, of the sidewalk.

The testimony showed that a large number of girls were regularly employed in the store; that the number of employees, both male and female, were appreciably increased in pre-holiday rushes, as when plaintiff was struck, many of them using the door four or five times a day and a large percentage of the customers likewise regularly used it for entrance and exit. It was equipped with a Ruskin door check, said to be one in general use, and it was also shown that the office of the door check was to retard the door in closing and to keep it from slamming and that it had little or no effect on the opening of the door. It was further shown that the door was harder to push open than an ordinary door, and, if it worked too easy, or too hard, it could be readily regulated by turning adjustment screws. It was also shown in evidence that there were practical methods for doors to public buildings to be constructed so as to swing outward without projecting over the sidewalk, such as constructing them in recesses within the building line, in vestibules, etc. It seems perfectly apparent, that the door, weighing around two hundred pounds, built flush with the sidewalk, and, when opened, swinging out practically over a third of it, and used to the extent shown by the testimony, necessarily created an element of danger to pedestrians using the sidewalk. Particularly is this true when we consider the extent of the use of the sidewalk made by the public. It was in a congested area and much used by the general public, by customers of the store in crowds, by adults and children, in the nighttime as well as in the daytime. Under the definition given by the courts of a nuisance, such a door could readily be classified as a nuisance from the time of its construction. A few definitions and comments from high authorities will tend to illuminate the subject.

Words and Phrases, Vol. 5, p. 4855, et seq., thus defines it: "A nuisance is anything that worketh hurt, inconvenience or damage." "A permanent encroachment on a public street for a private use is in law a nuisance." "The obstruction of a public highway is without doubt a public nuisance." "A thing may be a nuisance although it affects only person."

In Roper v. Wadleigh (Mo. App.), 219 S. W. 982, loc. cit. 983, the court said:

"Streets and sidewalks are primarily and essentially maintained for travel thereon . . . and any object in, near or over a street or sidewalk, under it or over it, which without notice or warning to the public is liable to cause injury to a person using the street or sidewalk is negligently maintained."

In Rose v. Gunn Fruit Co., 201 Mo. App. 262, 211 S. W. 85, this court held that "A cellarway opening adjacent to a sidewalk constituted a nuisance."

In Cool v. Rohrbach (Mo. App.), 21 S. W. (2d) 919, this court held as follows:

"Areaway in sidewalk so constructed as to endanger pedestrians is a nuisance and tenant or occupier maintaining areaway is liable in damages to pedestrians injured by reason of such nuisance."

In 20 R. C. L. 399, it is said:

"Since early times it has been recognized as a nuisance for one to obstruct or interfere with the right of the public to free and safe use of a highway for purposes of travel."

In 20 R. C. L. 433, it is said:

"By weight of authority, projection of a building or other structure over the land of another is a continuing nuisance. . . . Where such structure is a menace to persons passing on a highway it is a public nuisance."

In 20 R. C. L. 384, it is said:

"Nuisance may be both public and private in character. . . . A public nuisance becomes a private nuisance as to any person who is specially injured by it to any extent beyond injury to the public."

In 20 R. C. L. 382, it is said:

"Where the degree of danger is obvious and so extreme as to invite a calamity, a nuisance *per se* exists, but when danger is so secret in nature that the cause of an accident cannot be discovered, and, according to all experience is neither imminent nor extreme, it is not a nuisance *per se*, although a jury may find it a nuisance *in fact*. In the usual use of terms, a 'nuisance' may be and frequently is the consequence of negligence."

In 20 R. C. L. 381, it is said:

"Nuisance does not rest on degrees of care used for that presents a question of negligence but on the degree of danger existing even with the best of care. . . . In action for maintaining a nuisance, existence of the nuisance fixes the liability without proof of negligence on the part of the defendant."

In the case of Holroyd v. Sheridan, 65 N. Y. S. 442 (53 Ad. 14), a case was submitted to the court wherein a pedestrian walking along a sidewalk was struck and injured by a door which opened out across the walk. In that case, the court said:

"Where a barn abutting on a sidewalk and standing flush therewith has large and heavy doors swinging outward over the sidewalk to one-third of its width in such a manner as to endanger the safety of persons passing along it, such structure constitutes a nuisance for a special injury by which plaintiff can recover from the owner."

The facts in the Holroyd case, supra, bear a most remarkable similarity to the situation in the instant case.

In the case of Chambers v. Roanoke I. Ass'n, 111 Va. 254 (63 S. E. 980), the court held:

"Obstruction which unnecessarily impedes or incommodes the lawful use of highway is a public nuisance at common law."

This rule is followed in: Winkler v. Railroad Co., 126 N. C. 370, 35 S. E. 621; Mosher v. Vincent, 39 Iowa, 607; Hyde v. Middlesex Co., 68 Mass. 267; Adams v. Beach, 6 Hill's Rep. 271.

In Pearson v. Kansas City, 331 Mo. 885, 55 S. W. (2d) 485, the court said:

"Whether a particular act, structure, or use of property which is not a nuisance *per se*, is a nuisance in fact, is for the jury. . . . Nuisance does not rest on degree of care used but on degree of danger existing with best of care."

In the case of Shouse v. Dubinsky (Mo. App.), 38 S. W. (2d) 530, 1. c. 531, the court said:

"A pedestrian may assume that sidewalk adjacent to a building is in safe condition for travel."

In the Shouse case, supra, a fire escape, which overhung a public sidewalk, was the cause of an injury to a pedestrian who walked into the same on a dark night and the court further said:

"We are not required to decide whether the maintenance of the appurtenance constituted a nuisance (the case was pleaded under negligence) but if it did, appellant was under the duty to exercise care for safe maintenance thereof."

In the case of Schnitzer v. Powder Company (Mo. App.), 160 S. W. 282, the plaintiff, a passenger on a railroad train, was injured by an explosion in defendant's powder mill. In the course of its opinion the court, *inter alia*, held as follows:

"The defendant's powder mill was a public nuisance and the maintenance of the nuisance and not the explosion was the proximate cause of plaintiff's injury. . . . The explosion was the natural result of the nuisance."

Apropos of this doctrine, in 20 R. C. L. 381, the general doctrine is stated in this language:

"In a case of nuisance the question of negligence is absent and the only matter for determination is the degree of danger existing even with the best of care."

In Brown v. City of St. Johns, 187 Mich. 641, the action was one for injuries sustained by a pedestrian as a result of some sheet steel standing on the sidewalk against the front of a store where there was evidence that the steel was caused to fall by boys who were chasing a rat. It was held that if the street was not in a reasonably safe condition for public travel by reason of the position of the steel which

was shown to have been left in an almost vertical position, the city would be liable, even though the acts of the boys concurred with that of the city in causing the injury, and that it was the province of the jury to determine whether the street was safe for public travel under the circumstances shown.

The existence of the door in question, regardless of the manner in which it was opened at the time plaintiff was injured, was the proximate cause of her injury. The maintenance of the door so as to open outward over the sidewalk to the extent shown by the testimony was inherently dangerous. Defendant when it constructed the door must be held to have visualized in the future its use by divers and sundry persons who would open it with varying degrees of force, as it might be opened by a child who would scarcely be able to push it open (because it was given in testimony that normally it was rather hard to open) or it might be opened by a brawny adult who would use an excessive force in pushing it open. The one who opened it gently might give the pedestrian a harmless tap with the door and the one who opened it with more force than necessary might give the luckless pedestrian a blow which would injure him. But for all such injuries the party who created the nuisance by so constructing the door would be liable for whatever damage was inflicted, because the location of the door and its maintenance was the proximate cause of the injury. Had the door not been located so as to open out on the sidewalk, necessarily no pedestrian using the sidewalk could have been injured by its opening. While the trial court might have been justified in holding that the construction of the door, in the manner in which it was constructed, and its maintenance constituted a nuisance in fact, but it did not, and submitted that question to the jury, and, we think, rightfully so.

Defendant in its brief refers to instructions by numbers, and as none of the instructions are numbered in the record it has made it very confusing and difficult for us to determine to which instruction reference is made. We are able to clearly identify what is called plaintiff's instruction No. 1, as that is set out and commented on in its brief. However, we have examined all of the instructions, both those given and those refused.

In one of defendant's instructions, which was slightly modified before being given and read to the jury, after setting out in general terms that defendant had a right to free use and enjoyment of its property and had a right to build and operate the store and to provide a door on the Irvin Street side thereof, wound up with the following clause, viz.:

"You are also instructed that the law places on the plaintiff the burden of proving by the greater weight or preponderance of the credible evidence that the said door was a nuisance in that community

and that it was dangerous to persons using the sidewalk generally, and unless the plaintiff has established the fact that said door was dangerous to the people in that community who used the said sidewalk then you are instructed that said door was not a nuisance and your verdict must be for the defendant.''

Defendant's main instruction, or a bunch of its instructions grouped together, contained the following, viz.:

''You are instructed that the only theory upon which this case is being submitted to you as against defendant is upon plaintiff's charge that the door mentioned in evidence was so constructed as to constitute a nuisance. Unless you find therefore that said door was a nuisance, your verdict must be for the defendant.''

Also the following:

''You are instructed that the charge made by the plaintiff in this case that the defendant negligently permitted the door check mentioned in evidence to be and remain out of repair so that the door would not operate properly is withdrawn from your consideration and you cannot return a verdict for plaintiff on that ground.''

Also the following:

''You are instructed that before you can find that the door mentioned in evidence was a nuisance you must find that the door itself, simply by reason of the manner in which it was constructed and placed, in and of itself was dangerous to people using the sidewalk there, and unless you do so find, your verdict must be for the defendant.''

Also the following:

''And you are further instructed that if you find and believe from the evidence that the door, when operated in the manner that such a door would ordinarily be operated, did not constitute a nuisance within the meaning of this instruction, then your verdict must be for the defendant.''

Defendant's criticism of plaintiff's instruction No. 1 is without merit. It is urged that it erroneously directed the jury to find for the plaintiff if she was struck and injured by the opening of the door and thereby ignored defendant's theory that the accident was caused solely by the negligence of Frank Williams. Defendant also complains of the refusal of its instruction No. 8, which was to the effect that if plaintiff was struck and injured solely by reason of Frank Williams' negligence in opening the door in a violent and unusual manner, then the verdict should be for the defendant.

In the first place, we do not think that the facts shown by the testimony justify the contention that Frank Williams was negligent in opening the door to make his exit on the occasion in question. He testified that he was not in a hurry; that the door was usually rather hard to open and that for three or four days before the accident, it

had appeared to be easier to open than formerly and that on the night of December 27 he forgot about the door working easier and pushed against it the same as he had always done and that the door opened more easily than he had expected and struck the plaintiff, and that he went out and helped carry her home.

The testimony showed that the door was reached from the inside by going up five steps and then the person seeking an exit would have to turn, on the small platform which was on a level with the bottom of the door, in order to face the door to push it open; so that there was no chance for one to make a so-called "running shoot" whereby an extraordinary or an unreasonably excessive force could be applied in pushing the door open.

It was dark at the time, and plaintiff was walking along, unconscious of the fact that she was opposite an opening door, and off her guard, and when struck in the back she was evidently in such a position that a blow of any appreciable force would upset her and cause her to fall in the gutter.

But, even if it could be said that there was any proof that Frank Williams was negligent in pushing the door open, the proximate cause of plaintiff being struck was the location of the door and its maintenance so as to open out on the sidewalk as shown by the evidence.

In plaintiff's main instruction, one of the conditions of a recovery by her was that the jury should find that the maintenance of the door, as shown, constituted a nuisance, and, further that the swinging out of the door over the sidewalk was of itself inherently dangerous to pedestrians walking on the sidewalk, and the same idea was repeatedly expressed in defendant's instructions as hereinbefore set out.

Defendant's criticism of plaintiff's instruction and its claim that its instruction No. 8, which sought to lay the blame of the plaintiff's injury on the alleged negligence of Frank Williams, is based on the mistaken idea of mixing a nuisance charge with a negligence charge, because it is well settled, by the authorities hereinbefore cited, that nuisance does not rest on the degree of care used, but on the degree of danger existing even with the best of care. The authorities cited by defendant are based on the negligence theory, rather than the nuisance theory. The existence of the nuisance fixes liability without proof of negligence on the part of the defendant, which signifies that, if the door in question, as located and maintained, constituted a nuisance it becomes immaterial whether the plaintiff was injured by reason of the door being pushed open in a careless, abrupt or unusual manner.

We have carefully examined all of the instructions and are unable to detect any error which materially affects the merit of the cause, and, by the provisions of section 1062, Revised Statutes Missouri 1929 (Mo. Stat., Ann., sec. 1062, p. 1352), we are forbidden to

reverse a cause unless we find that the error is such as materially affects the merits of the case, it therefore follows that the judgment of the lower court should be affirmed, and, it is so ordered. *Becker* and *McCullen, JJ.,* concur.