(No. 6918.    December 22, 1941)

HENRY RIEF, Appellant, v. THE MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation, and DEWEY-DAVIS ESTATE, INC., a corporation, Respondents

(120 Pac. (2d) 823)

Rehearing denied January 19, 1942

Frank F. Kibler and Creed W. Mullins, for Appellant.

Richards & Haga and Hawley & Hawley, for Respondents.

Holden, J.—At the time of the occurrence of the accident hereinafter mentioned, the Dewey-Davis Estate, Inc., owned and had leased to respondent Mountain States Telephone and Telegraph Company a part of a certain building fronting and abutting on First Avenue South in the city of Nampa, Idaho. The leased premises were used and occupied by the telephone company as its main office and principal place of business in that city. A screen door, which opened out on the street, giving ingress and egress, had been installed at the entrance to the office of the telephone company, and was in use by patrons of the company.

At about half-past two o'clock on the afternoon of September 4, 1939, as Henry Rief, who was walking on the right-hand or southerly side of First Avenue South, reached the point where this screen door was located, it opened outward (whether by someone coming out, or how, the record does not disclose) immediately in front of him. He struck his head on the door and fell to the sidewalk, sustaining certain bodily injuries.

September 9, 1940, Mr. Rief commenced an action in the District Court for Canyon County against the Dewey-Davis Estate and the Mountain States Telephone and Telegraph Company for the recovery of resulting dam-

ages. The estate and the telephone company separately demurred to plaintiff's complaint on the ground it did not state facts sufficient to constitute a cause of action. January 17, 1941, the trial court sustained these demurrers, granting appellant twenty days within which to file an amended complaint. February 8, 1941, no amended complaint having been filed, the court entered judgment of dismissal from which this appeal was prosecuted.

Appellant contends

"It should be quite apparent upon reading the complaint against the defendants here, that this action is not predicated upon any act of negligence whatsoever, but is rather based and concisely stated to be on a public nuisance theory. Therefore, it is not incumbent upon the plaintiff to plead or allege negligence, or that the matter complained of was negligently done."
that

"This door as maintained was a nuisance per se, by reason of its being placed in the position where it opened outward three feet over the public sidewalk makes it so," and that

"This door could be, and probably was, perfectly safe for ordinary use, opening outward over the public sidewalk, until such time as that use resulted in injury such as in this case. We do not believe that it makes any difference in this type of case just how good the installation was, or that it is material at all whether or not there were any defects in the door. The ultimate fact is that a door, regardless of its condition or manner of installation, opened outward over the sidewalk and injured a pedestrian, who was in a place where he had every lawful right to be at that time. This is a public nuisance, and the fact that due care was exercised and due precautions were taken against the annoyance or injury complained of is no excuse."

Thus a single decisive question is presented: Was the maintenance and use of the screen door a nuisance *per se?* There is a sharp, pronounced division of judicial opinion on this question. The authorities to which appellant directs our attention are: *Higginbotham v. Kearse,* 111 W. Va. 265, 161 S. E. 37, 77 A. L. R. 1110; *Boyle v.*

*Neisner Bros.*, 230 Mo. App. 90, 87 S. W. 2d 227; *Holroyd v. Sheridan*, 53 N. Y. App. Div. 14, 65 N. Y. Supp. 442; *Chambers v. Roanoke Industrial and Agricultural Ass'n.*, 111 Va. 254, 68 S. E. 980; *King v. Hartung*, 123 Va. 185, 96 S. E. 202; *Congreve v. Smith*, 18 N. Y. 79; *O'Hanlin v. Carter Oil Company*, 54 W. Va. 510, 46 S. E. 565, 66 L. R. A. 893; *Winkler v. Caroline & N. W. Ry. Co.*, 126 N. Car. 370, 35 S. E. 621, 78 Am. St. Rep. 663; *Mosher v. Vincent*, 39 Iowa 607; *Hyde v. County*, 2 Gray (Mass.) 267; *Adams v. Beach*, 6 Hill (N. Y.) 271.

*Higginbotham v. Kearse* and *Boyle v. Neisner, supra,* are particularly relied upon by appellant. In the Higginbotham case the West Virginia Supreme Court of Appeals said:

"We recognize and adhere to the principle already adverted to that the owner of property abutting a highway may make use thereof which is not consistent with the unimpeded use of the highway at all times by travelers whether on foot or in vehicle. Such use, however, must be reasonable, and above everything else, it must not involve a situation which savors of the characteristics of a trap, that is, there must not be employed any contrivance or instrumentality which may, in either a latent or an operating state, take by surprise and unawares a person using the highway and injure him. An instrumentality which in its normal operation may inflict serious injury on a pedestrian howsoever carefully he may be moving along the street is inherently dangerous and constitutes a menace to all persons using such public way. It is a public nuisance. The employment of such instrumentality is violative of fundamental principles of personal and property rights. It ignores the former and exaggerates the latter. What possible conception of property rights can justify a property owner in maintaining at the entrance of his building binding on a public street a door so hung on hinges that it must swing out when opened, and which may at any instant, at the hands of an innocent user, be pushed into the face of a passing pedestrian? It may mar for life the countenance of a beautiful girl; it may cripple a little child, or it may hurl to the hard surface of the pavement an aged man and

inflict grievous injury, as in this case. The law will not permit an owner of such instrumentality to stand free of responsibility, if the latter was free of negligence. Many decisions and texts sustain the principles underlying these statements."

And in *Boyle v. Neisner Bros. supra,* the St. Louis Court of Appeals said this:

"We are thoroughly impressed with the soundness of the doctrine that sidewalks are primarily designed for use by the public and that no private person, for purely business reasons, has the legal right to so use them as to obstruct, interfere with, or impair the right of the public to the free use of them. If we admit that the owner or occupier of property has the legal right to maintain a door which opens so as to take up one third of the width of the sidewalk, then it follows that he would have the legal right to maintain one which, when opened, would take up two-thirds, or one which, when opened, would take up the whole width, of the sidewalk.

"The testimony showed that a large number of girls were regularly employed in the store; that the number of employees, both male and female, were appreciably increased in pre-holiday rushes, as when plaintiff was struck, many of them using the door four or five times a day and a large percentage of the customers likewise regularly used it for entrance and exit. It was equipped with a Ruskin door check, said to be one in general use, and it was also shown that the office of the door check was to retard the door in closing and to keep it from slamming and that it had little or no effect on the opening of the door. It was further shown that the door was harder to push open than an ordinary door, and, if it worked too easy, or too hard, it could be readily regulated by turning adjustment screws. It was also shown in evidence that there were practical methods for doors to public buildings to be constructed so as to swing outward without projecting over the sidewalk, such as constructing them in recesses within the building line, in vestibules, etc. It seems perfectly apparent that the door, weighing around 200 pounds, built flush with the sidewalk, and, when opened, swinging out practically over a third of it,

and used to the extent shown by the testimony, necessarily created an element of danger to pedestrians using the sidewalk. Particularly is this true when we consider the extent of the use of the sidewalk made by the public. It was in a congested area and much used by the general public, by customers of the store in crowds, by adults and children, in the nighttime as well as in the daytime. Under the definition given by the courts of a nuisance, such door could readily be classified as a nuisance from the time of its construction."

Respondents contend the maintenance and use of the screen door was reasonable and was not inherently dangerous and did not constitute a substantial obstruction to the use of the sidewalk, therefore, was not a nuisance *per se,* citing *Jochem v. Robinson,* 72 Wis. 199, 39 N. W. 383, 1 L. R. A. 178; *Welsh v. Wilson,* 101 N. Y. 254; *Garibaldi & Cuneo v. O'Connor,* 210 Ill. 284, 71 N. E. 379, 66 L. R. A. 73; 25 Am. Jur. 575, para. 282; 25 Am. Jur. 585, para. 291; 13 R. C. L. 193, para. 164; 13 R. C. L. 200, para. 171; 13 R. C. L. 210, para. 179; Joyce, Law of Nuisances, pp. 20, 37, paras. 12, 21; 46 C. J. 655, para. 20; *Gensler v. Kemble,* 227 Pa. 508, 76 A. 223; *Edwards v. Brayton,* 25 R. I. 597, 57 A. 784; *Evans v. Lord Provost, Magistrates, and Council of City of Edinburgh, et al.,* Ann. Cas. 1916E, p. 455; *Lewis v. Jake's Famous Crawfish, Inc., et al.,* 148 Ore. 340, 36 P. 2d 352. Particular stress is laid upon the holding in *Evans v. Lord Provost* and *Lewis v. Jake's Famous Crawfish, supra.* We quote from the opinion delivered by Lord Buckmaster in the Evans case:

"In my opinion, the words of that section[1] have no application to a door that is normally entirely within the proper limit and boundary of the man's premises and only projects over the highway when it is opened. Encroachment, obstruction, and projection in that section mean something in the nature of a permanent encroachment, obstruction, or projection, something that can be removed by order of the magistrates, and failure to remove which

---

[1] The Edinburgh Municipal and Police Act of 1879, section 151 of which provides "No person shall make any encroachment, obstruction, or projection in, upon, or over any street, court, foot-pavement, or footpath, * * * "

will render the owner of the premises liable in damages. It has no relation to a door which, unless it is opened, neither encroaches on nor projects over nor obstructs the highway or footpath."

Lord Atkinson said:

" * * * There is no duty upon them at common law not to keep premises with a door opening on the street where that door unopened is a perfectly harmless thing. Neither do I think that there is a duty cast upon them owing to a mere passerby to prevent any person ever opening the door."

In *Lewis v. Jake's Famous Crawfish, Inc., et al., supra,* the Supreme Court of Oregon said:

"It is common knowledge that sidewalk doors [trap doors] similar to those involved in this action, are in general use in the city of Portland, and it must be presumed, so far as this case is concerned, that their maintenance and use do not constitute per se a nuisance. There was nothing inherently dangerous in the construction of these doors, or in their use."

We come now directly to a consideration of our statute (Section 51-101, I. C. A.) defining a nuisance, the pertinent part of which reads:

"Nuisance defined.—Anything which is * * * an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance * * *."

Appellant insists "The facts here meet the applicable part of the definition of a nuisance in Section 51-101, I. C. A. Did, then, the maintenance or use of the screen door constitute such an obstruction as would interfere with the free and comfortable use and enjoyment of the sidewalk within the meaning of the above quoted statute? It is common knowledge that at the time of and ever since the enactment of this statute (1915) doors similar to that involved in this case were and still are in general use in Idaho. We did not then and do not now have any large cities where throngs of pedestrians commonly travel the public sidewalks, in congested business centers, passing and repassing, many abreast. Hence, we cannot attribute to the legislature an intent to include within its

definition of a nuisance doors similar to that involved in this case, then commonly maintained and in use in the various towns of the state. Furthermore, no hint of such an intent can be found in the statute. Moreover,

"It is not every obstruction in a street or highway that constitutes a nuisance per se, * * *. On the contrary, the right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations, and to such incidental, temporary, or partial obstructions as manifest necessity may require." 13 R. C. L. 210, para. 179.

We conclude the maintenance and use of this screen door did not in and of itself constitute a substantial obstruction or an inherent interference with the free or comfortable enjoyment of life or property within the meaning of our statute, and that the maintenance and use of this door did not constitute either a public or private nuisance *per se.* under any statute of this state. It follows the judgment of dismissal of the trial court must be affirmed, and it is so ordered, with costs to respondents.

Givens and Ailshie, JJ., concur.

Morgan, J., dissents.

Budge, C.J., sat at the hearing but did not participate in the decision.

On Petition for Rehearing
(Filed January 22, 1942)

HOLDEN, J.

Appellant has filed a very able and comprehensive brief in support of his petition for a rehearing in this case which we have examined with great care. He seems fearful that the "recognition of the right established in the court's decision simply opens the door to greater abuses and permits in this state further encroachments upon the public's right to the use of the sidewalks." To allay these fears we direct attention to the fact that what

this court held was simply this: that anything which did not amount to or "constitute a substantial obstruction or an inherent interference with the free or comfortable enjoyment of life or property within the meaning of our statute [Section 51-101, I. C. A.]," was not a public nuisance *per se,* pointing out the right of the public to the free and unobstructed use of a street is subject to reasonable and necessary limitations and to such incidental, temporary or particular obstructions as manifest necessity may require. Furthermore, and as recognized and conceded in appellant's brief, any municipality of this state may prevent or remove anything which it believes to be an unreasonable encroachment upon or into a sidewalk, as appears from Section 49-1123, I. C. A., wherein it is provided municipalities shall have power to:

" * * * prevent and remove all encroachments upon and into all sidewalks * * * "

Hence, we find no reason for departing from our decision in this case and consequently adhere thereto. The petition is denied.

Givens, C.J., and Ailshie, J., concur.

Budge, J., did not participate in the foregoing opinion.