252 N.J. Super. 53 (1991)
599 A.2d 194
ANDREA KOLBA, PLAINTIFF,
v.
EUGENE KUSZNIER, AND JOSE AND JULIA ALONSO, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided August 12, 1991.
Michael A. Chasan for plaintiff (Leonard & Leonard, attorneys).
Robert F. Cox for defendant Eugene Kusznier (McCreedy & Cox, attorneys).
*54 Gregory J. Lawrence for defendants Jose and Julia Alonso (Paul Seligman, attorney).
MENZA, J.S.C.
This opinion is an elaboration of a decision made by the court during the course of trial.[1]
Does a property owner have a duty to maintain shrubbery on his property so as to prevent it from being a visual obstruction to motorists? There are no New Jersey cases which have addressed this issue.
Plaintiff was involved in an automobile intersection accident with defendant, Eugene Kusznier. She contends that the accident was caused by the negligence of both defendant Kusznier and defendants, Jose and Julia Alonso, who are the owners of property located at the intersection in question. Specifically, with regard to the property owners, plaintiff contends that they maintained shrubbery on their property which they knew or should have known obstructed the vision of motorists travelling on the adjacent streets and which thereby created an unreasonable risk of harm to those motorists.
The common law has traditionally made a distinction between artificial and natural conditions of land, imposing liability where an artificial condition causes injury and avoiding it where it is the result of a natural condition.
The Restatement, Torts 2d, § 363 (Natural Conditions) states:
(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.
(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on land near the highway.
*55 The rationale for this distinction is succinctly stated in Prosser, Torts:
... the traditional rule, of both the English and the American courts, that he is under no affirmative duty to remedy conditions of purely natural origin upon his land, although they may be highly dangerous or inconvenient to his neighbors. The origin of this, in both countries, lay in an early day when much land, in fact most, was unsettled or uncultivated, and the burden of inspecting it and putting it in safe condition would have been not only unduly onerous, but out of all proportion to any harm likely to result.
....
On the other hand, if the occupier has himself altered the condition of the premises, as by erecting a structure which discharges water upon the sidewalk, setting up a parking lot upon which water will collect, weakening rocks by the construction of a highway, damming a stream so that it forms a malarial pond, planting a row of trees next to the highway, digging out part of a hill, or piling sand or plowing a field so that the wind may blow it, the condition is no longer to be regarded as a natural one, and he will be held liable for the damage resulting from any negligence. [Prosser, Torts, (5 ed. ___) at 390-391.]
Section 364 of the Restatement, Torts 2d (Creation or Maintenance of Dangerous Artificial Conditions) provides:
A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if
(a) the possessor has created the condition, or
(b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession, or
(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it.
Section 368 of the Restatement, Torts 2d (Conditions Dangerous to Travelers on Adjacent Highway) states:
A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while travelling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
(a) are traveling on the highway, or
(b) foreseeably deviate from it in the ordinary course of travel.
*56 There is a distinct lack of unanimity throughout the country in the application of these concepts to visual obstructions of a roadway caused by trees and shrubs on private property.
In Bohm v. Racette, 118 Kan. 670, 236 P. 811 (1925), the court stated, without explanation, that an owner of land adjoining an intersecting roadway, and on whose property high hedges were permitted to grow so as to obstruct the right angle approach to the corner of the land at the intersection of the roadway, was not liable to persons who were injured in an automobile collision caused by the visual obstruction.
And in Rodgers v. Ray, 10 Ariz. App. 119, 457 P.2d 281 (1969), the court, citing Bohm as authority, held:
It is our view that there is no duty upon the possessor or owner of land abutting public highways to refrain from using his land so as to obstruct a view across his property for those using the public highways. If there was an allegation here that the obstructions had been created maliciously, for the express purpose of obstructing the view of travelers upon the highway, or even that the obstructions served no economic purpose, a more critical examination of the law would be necessary. But, here, we have the undisputed fact that the dikes in question served a legitimate farming purpose. If these property owners can be held liable for the obstruction of view across their land, then those who build skyscrapers on busy city streets should also be submitted to the same test, and we know of no such law. [457 P.2d at 283]
In Fritz v. Parkison, 397 N.W.2d 714 (Iowa Sup.Ct. 1986), the Iowa Supreme Court in a well-reasoned opinion concluded that there was no duty on the property owner to trim branches which overhung the right of way of the road. An extensive quote from this case is appropriate. The court said:
Both parties concede that this court, applying logic and sound reason, must first identify and balance various policy considerations relevant to a determination whether, in these circumstances, the law should recognize a duty of reasonable care running from the landowner to the motorist.
Implicated in this case are two well developed and clearly recognized public policies. First, in light of our increasingly mobile society, highways must be kept free from obstructions and hazards. Recognizing this important public policy, we have at various times imposed liability against individuals responsible for allowing a highway to become obstructed or hazardous. [citations omitted] In each of these cases, the traveled way actually was obstructed and in several of them the hazard presented was sudden and unexpected. *57 By contrast, in this case, Norton's trees did not physically obstruct or in any way intrude upon the traveled portion of the road. Rather, the trees were located off the right-of-way. They neither directly impeded travel nor constituted any kind of latent condition; for example, a rotten limb that without warning might fall across the road or onto a passing vehicle. [citations omitted] While Norton's trees may have required drivers to proceed with some additional degree of caution, the trees could not reasonably have been expected to pose any significant threat to motorists operating their vehicles in a reasonably prudent manner, and clearly could not be characterized as an unexpected occurrence like a falling limb or a gaggle of geese. It is equally plain the primary responsibility for insuring reasonably safe highways is not imposed on abutting property owners.
The second policy implicated by this action is a well-established state goal to encourage the growth and cultivation of trees and discourage their wanton destruction.
A third related factor to be considered in determining the existence or nonexistence of a common law duty is which parties are best able to prevent or substantial lessen the likelihood of an accident, and at what cost. Ordinarily a landowner in Norton's position would have no expertise in determining what does or does not constitute sufficient visibility or in concluding what steps would be required to select offending trees. Unobstructed vision for approaching motorists might require cutting back trees located five or one hundred feet from the property line, depending on terrain and other circumstances. Clearly, the cost of identifying measures to improve visibility coupled with the costs of periodic trimming or removing trees would be substantial. Although such steps might be effective, we question whether they could be justified economically, given the infrequency with which such accidents occur. [at 715-716]
In Nichols by Nichols v. Sitko, 157 Ill. App.3d 950, 109 Ill.Dec. 903, 510 N.E.2d 971 (1987), the court held that a minibike rider failed to state a cause of action against a property owner for injuries sustained when he was struck by an automobile whose driver's visibility was impaired by weeds and foliage on the property owner's land. The court said:
... we believe that, as distinguished from overgrown weeds, the injury caused by trees occurs as a result of some actual physical intrusion by the unsound tree. Whereas in a case such as this, we are dealing with an alleged visual obstruction. This visual obstruction is no different from obstructions which are caused by houses and buildings encountered routinely in daily life. [510 N.E.2d at 974]
Other cases, however, have imposed a duty upon property owners. In Wisher v. Fowler, 7 Cal. App.3d 225, 86 Cal. Rptr. 582 (1970), the court held that a complaint stated a cause of action by alleging negligence of a property owner for allowing *58 a hedge to be maintained which blocked a motorist's view from a driveway. The court said:
If it were proved that respondent "created" the hedge, the hedge would not be a "natural condition" within the meaning of section 363 of the Restatement. (See comment b, to section 363: "On the other hand, a structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved, * * *"). In that situation it would be a question of fact whether the particular unnatural condition would, under general principles of negligence, expose the landowner to liability. [86 Cal. Rptr. at 584.]
In Hamric v. Kansas City Southern Ry. Co., 718 S.W.2d 916 (Tex. Ct. App. 1986), the Texas court of appeals held that the evidence presented a factual question as to whether defendant railroad breached its duty of care by failing to cut vegetation on its right of way which caused a visual obstruction to motorists. The court said:
We hold this case should be governed by the rule that the owner or occupier of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of motorist using the highway as a means of passage and the owner or occupier is liable for injuries that proximately resulted from his negligent acts in this respect. [at 918]
In Langen v. Rushton, 138 Mich. App. 672, 360 N.W.2d 270 (1984), the court, in deciding whether a shopping center was liable for injury to a motorist caused by a visual obstruction from a street on defendant's property, said:
With the ever-increasing development of shopping centers and malls and the sprawl of adjacent parking lots, it only becomes increasingly difficult for public motorists to avoid routs paved with new development. Where the parking lot of a shopping center abuts a public highway, it is entirely foreseeable that a serious accident may occur between a customer entering or exiting from the parking lot and a highway motorist. Under such circumstances, we think it wholly just to impose a burden upon a defendant landowner to design, develop and maintain a parking area so as to prevent an unreasonable risk of harm to motorists traveling on adjacent highways. [360 N.W.2d at 273]
And in Coates v. Chinn, 51 Cal.2d 304, 332 P.2d 289 (Cal.Sup. Ct. 1958), a case which dealt with different facts but a similar concept, the California Supreme Court held that it was a jury question as to whether the landowners were negligent in permitting eucalyptus trees to grow alongside the highway without taking any precautionary steps to control their natural propensity to drop their limbs.

*59 The eucalyptus trees planted alongside the highway constituted "a nonnatural or artificial condition" created on the land as distinguished from a "natural condition" of the land, "irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces." [332 P.2d at 292]
The court then cited section 368 of the Restatement, Torts 2d and concluded:
In view of this evidence, plaintiff properly contend that it was a question of fact whether defendant acted as reasonably prudent persons in permitting the eucalyptus trees to grow alongside the highway without taking any precautionary steps to control their natural propensity to drop their limbs, particularly during the rainy weather of the early fall when the accident happened. Accordingly, plaintiffs were entitled to have their case submitted to the jury on the issue of negligence. [at 293]
Although there are no New Jersey cases which have addressed the precise issue presented in this case, the following cases are instructive and provide guidance:
In Weller v. McCormick, 52 N.J.L. 470, 19 A. 1101 (E. & A. 1890), a case decided 100 years ago and which is still good law, the Court stated:
It now appears that the tree was planted by a private person upon his own property, and it is to be assumed chiefly for his own ends.
....
... it must be concluded that he maintained the tree in the street for his private purpose and hence... he was bound to exercise due care to prevent its becoming dangerous. [at 471-472, 19 A. 1101]
In Narsh v. Zirbser Brothers, Inc., 111 N.J. Super. 203, 268 A.2d 46 (App.Div. 1970), a case involving the fall of a tree on a motorist, the court stated:
The Rule is well settled in this State that one who places or maintains in or near a highway, anything, if neglected, will render the way unsafe for travel, is bound to exercise due care to prevent it from becoming dangerous. [at 208, 268 A.2d 46 (citing Weller v. McCormick)]
This court is of the opinion that the decisions which exempt a property owner from liability for a visual obstruction are rooted not so much in legal concepts, but in the concern that the imposition of a duty would result in a flood of litigation against property owners  a policy decision, if you will, rather than a *60 legal one. However, it seems to this court, in light of the origin of the rule regarding natural and artificial conditions of land, and the black letter law of the Restatement, that the better view is to impose a duty upon a property owner whose shrubbery visually obstructs an intersection.
In this case, the shrubbery was planted on the property by either defendants or their predecessors in title. It was therefore an artificial condition of the land rather than a natural one. The Restatement, reflecting the common law, makes it clear that where an artificial condition causes injury to another person outside of the land, the property owner is liable. It should be of no moment, therefore, that the injury occurs because of a physical obstruction in the roadway, a falling limb or a visual obstruction caused by shrubbery on the property. If there is an artificial condition on the land of which the property owner knows, or should know, and that condition causes injury to persons outside the land, the property owner should be liable. Defendants, Alonso, therefore had a duty to exercise reasonable care to insure that the artificial condition that they created by planting the shrubbery did not thereby create a foreseeable risk of injury to persons using the roadway. Whether they did so is a jury question.
This court must note that it is fully cognizant of the ramifications of a decision which imposes liability on a property owner for failure to maintain shrubbery on his property which results in visual obstructions to motorists on adjacent streets. At first blush, it would appear, particularly in an urban setting, that the floodgates of litigation would, in fact, be opened by imposing such a duty on the property owner. But this court does not believe that this would be the case. The erection of structures in urban localities and the planting and maintenance of trees and shrubbery on corner property, are almost always governed by municipal ordinances which take into account sight lines and traffic patterns. And, I am of the opinion that sovereign *61 immunity laws would effectively protect public entities against baseless claims.
However, in all fairness it must be said that the public policy question of whether to impose a duty could be justifiably argued either way. But in light of the origin and rationale of the rule, this court concludes that the public policy of this State is better served by imposing a duty. This court, in recognizing that the property owner owes such a duty, does not thereby conclude that defendants were negligent. It only concludes that because they have a duty of care, it is a jury question as to whether they were negligent in breaching that duty.
NOTES
[1] The trial concluded on August 12, 1991. A jury verdict was rendered in favor of defendant